# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

John Edward Clark,

        Petitioner,

v.

M. Cruz, Warden,

        Respondent.

**MEMORANDUM OPINION AND ORDER**
Civil No. 09-639 ADM/SRN

---

John Edward Clark, pro se.

Chad A. Blumenfield, Assistant United States Attorney, Minneapolis, MN, for Respondent.

---

## I. INTRODUCTION

By Order ("Order") dated August 11, 2009 [Docket No. 28], the undersigned United States District Judge denied Petitioner John Edwards Clark's ("Clark") 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus [Docket No.1], denied as moot Clark's Motion for Temporary Restraining Order [Docket No. 6], and denied Clark's Motion for Temporary Restraining Order [Docket No. 7]. On September 15, 2009, Clark filed two motions under Rule 59(e) of the Federal Rules of Civil Procedure: (1) a Motion to Alter or Amend and Reconsideration of Judgment of Temporary Restraining Order [Docket Nos. 30, 32] and (2) a Motion to Alter or Amend and Reconsideration of Habeas Corpus Judgment of Ex Post Facto Violation [Docket No. 33]. For the reasons discussed below, Clark's motions are denied.[1]

---

[1] Although the government briefed application of the Dataphase factors, the Court will not address whether Clark has satisfied the test for injunctive relief because the issue is not appropriately before the Court.

## II. BACKGROUND

The Court's August 11, 2009 Order set forth the following relevant facts and history.

> Clark is a federal prisoner incarcerated at the Bureau of Prisons ("BOP") Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"). Kinyon Decl. [Docket No. 9] ¶ 2, Attach. A, Public Information Data. He is serving a 179-month sentence, followed by five years of supervised release, imposed in the United States District Court, District of Minnesota. Id. His projected release date is May 4, 2011. Id.
>
> The BOP offers several programs to meet the needs of inmate populations including substance abusers. Kinyon Decl. ¶ 3. The Residential Drug Abuse Program ("RDAP") has separate housing units from the general inmate population. Id. It is designed to isolate program participants from the negative peer pressure of the larger prison environment and create a community that supports pro-social attitudes and behaviors. Id. The program includes daily community meetings, and all inmates in the housing unit at the time of the meeting are required to attend and participate. Id., Attach. B, Program Statement 5330.11, Psychology Treatment Programs § 1.6.5. Inmates waiting to enter RDAP, known in BOP parlance as "RDAP WAIT," live in the treatment unit or in an adjacent unit and are required to follow the same unit rules as those participating in RDAP. Id.
>
> Clark has been residing in the RDAP Unit since September 2008 when he was classified as RDAP WAIT. Id. ¶ 4. He was officially admitted to RDAP on May 18, 2009. Amundson Decl. [Docket No. 22] ¶ 2. Amundson Decl. [Docket No. 22] ¶ 2. After an inmate is admitted to RDAP, the residential portion of the program lasts approximately 9 to 12 months. Kinyon Decl. ¶ 4. Upon completing the residential portion, the inmate enters an initial transitional phase in the institution followed by another transitional phase in a community halfway house. Id. Assuming Clark successfully completes the residential components of the program, he will finish that portion of the program in approximately February 2010. At that time, Clark may be deemed eligible for early release under 18 U.S.C. § 3621(e)(2)(b), effectively reducing his sentence by approximately one year. Id.
>
> The RDAP program is voluntary. Id. ¶ 5. When an inmate chooses to participate, he is required to sign an agreement to abide by all program rules and requirements as a condition of being admitted to the program. Id. Clark signed the agreement, specifically agreeing to participate in "Classes/counseling/group

2

> sessions as designated by the BOP Psychology and Drug
> Treatment Staff." <u>Id.</u>, Attach. D, Agreement to Participate in a
> BOP Residential Drug Abuse Treatment Program. The agreement
> also states that Clark is responsible for "attending all scheduled
> sessions that are assigned to [him][,] . . . completing all
> assignments[,] . . . [and] actively participating in group sessions . .
> . ." <u>Id.</u> The BOP requires all inmates living in the unit, whether
> RDAP WAIT or active participants, to attend and participate in
> "Community Meetings." <u>Id.</u>, Attach B, Program Statement
> 5330.11, § 1.6.5. Clark has attended "Community Meetings"
> while on the waiting list since September 2008. Petition at 2.

Order at 2-3.

Each inmate's treatment team observes program participants and conducts progress reviews every 60 days. Amundson Decl. ¶ 3. At Clark's 60-day RDAP progress review, the BOP determined that he should be remediated to begin the program again at the Orientation phase.

In Clark's Motion to Alter or Amend and Reconsideration of Judgment of Temporary Restraining Order, he now alleges that the decision to remediate him is retaliation for having filed a habeas petition. He argues that remediation is effectively an expulsion from the RDAP because he is being removed from his original RDAP class, thereby losing 120 days of programming time. He further contends that his remediation violates Program Statement 5330.11, Psychology in Treatment Programs, § 550.53(g), which states that an inmate must be given at least one treatment intervention prior to expulsion from the RDAP. Clark seeks an injunction to prevent his remediation.

In Clark's Motion to Alter or Amend and Reconsideration of Habeas Corpus Judgment of Ex Post Facto Violation, he states that he became an RDAP WAIT inmate on September 22, 2008, prior to the community meeting provision being in effect. Since the community meeting

provision was not effective until March 16, 2009, Clark argues that compelling him to participate in community meetings before the provision's effective date violates the Ex Post Facto Clause of the United States Constitution.

## III.  DISCUSSION

### A.  Rule 59(e) and Rule 60(b)

Rule 59(e) provides: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."  Fed. R. Civ. P. 59(e).[2]  Judgment in this case was entered on August 12, 2009, and Clark's two motions to alter or amend judgment were not filed until September 15, 2009, thirty-four days after judgment was entered.  Because Clark's Rule 59(e) motions run afoul of the ten-day time requirement on such motions, Clark seeks the Court's consideration of his motions pursuant to Rule 60(b).

Rule 60(b) provides:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

---

[2] Rule 59(e) was amended in 2009 to allow twenty-eight days after the entry of judgment for the filing of a motion to alter or amend judgment.  This amendment is not effective until December 1, 2009.  Even if it were effective, however, Clark's motion was not timely filed.

4

> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Clark has not identified which subsection of Rule 60(b) is the basis for his request. He does not articulate "mistake, inadvertence, surprise or excusable neglect" warranting relief under Rule 60(b)(1); he has not cited any "newly discovered evidence"[3] that could entitle him to relief under Rule 60(b)(2); he has not alleged any "fraud, misrepresentation, or misconduct" justifying relief under Rule 60(b)(3); he has not suggested that the prior judgment is "void" and that relief is therefore available under Rule 60(b)(4); and he has not shown that the prior dismissal "has been satisfied, released or discharged" warranting relief pursuant to Rule 60(b)(5). Therefore, the "catchall" provision in Rule 60(b)(6) provides the only plausible basis for granting Clark relief from the Order dismissing Clark's claims.

The Supreme Court has held that "a movant seeking relief under Rule 60(b)(6) . . . [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005) (citation omitted). Clark has failed to identify any "extraordinary circumstances" that could warrant relief under Rule 60(b)(6).

Clark has alleged that the decision to remediate him is retaliation for filing a habeas petition. However, he fails to explain why this allegation entitles him to relief from the order of dismissal in <u>this</u> case. Whether Clark's retaliation allegation could serve as the basis of a new habeas proceeding is not an issue before the Court. Furthermore, Clark's argument regarding the

---

[3] Clark argues that the BOP's alleged retaliation constitutes newly discovered evidence. However, this "new" evidence is not relevant to the Court's prior Order.

BOP's alleged violation of the Ex Post Facto Clause violation is an attempt to reargue an issue already addressed by the Court and is not a proper basis for relief under Rule 60(b).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Clark's Motion to Alter or Amend and Reconsideration of Judgment of Temporary Restraining Order [Docket Nos. 30, 32] and Motion to Alter or Amend and Reconsideration of Habeas Corpus Judgment of Ex Post Facto Violation [Docket No. 33] pursuant to Rule 59(e) are **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 25, 2009.